**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JACOB S. HEIMROTH,

                                   Petitioner,

        - v -                                              9:21-CV-1376
                                                           (MAD/DJS)
CHRISTOPHER MILLER,

                                   Respondent.

**APPEARANCES:**                          **OF COUNSEL:**

JACOB HEIMROTH
Petitioner, *Pro Se*
17-A-0174
Five Points Correctional Facility
Caller Box 119
Romulus, New York 14541

HON. LETITIA JAMES                         PRISCILLA STEWARD, ESQ.
Attorney General of the State of New York
Attorney for Respondent
28 Liberty Street
New York, New York 10005

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER[1]

*Pro se* Petitioner Jacob Heimroth is currently incarcerated at Five Points

Correctional Facility.  He seeks a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

Petitioner's incarceration stems from his conviction on January 4, 2017, for two counts

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

of Murder in the Second Degree, two counts of Burglary in the First Degree, one count of burglary in the second degree, and one count of Grand Larceny in the Fourth Degree. Dkt. No. 20, State Court Record ("SR.") at p. 1208-1217.[2]  Petitioner was sentenced on all charges to an aggregate term of 50 years to life imprisonment.  *Id.*  The Appellate Division, Third Department, unanimously affirmed the conviction.  *People v. Heimroth*, 181 A.D.3d 967 (2020), *leave to appeal denied, People v. Heimroth*, 35 N.Y. 3d 1027 (2020), *reconsideration denied, People v. Heimroth*, 35 N.Y. 3d 1066 (2020).

Petitioner asserts the following grounds for habeas relief in the present Petition: (1) that he was denied his constitutional right to a speedy trial; (2) that his conviction was not supported by legally sufficient evidence; (3) that the prosecution knowingly elicited false testimony from one of its witnesses; (4) that the prosecution withheld impeachment evidence for that same witness; (5) that he was denied a fair trial by the introduction of photographs which showed the victims' injuries; and (6) that a fair trial was impeded by the trial court's response to the jury's request for a readback of a portion of a witness' testimony.  Dkt. No. 1, Pet.

---

[2] Citation to the State Court Record at Dkt. Nos. 20, 20-1, & 20-2 is in the form "SR." followed by the page numbering provided by Respondent in the lower left-hand portion of the Exhibit.  Citation to the State Court Trial Transcript at Dkt. No. 20-3 is in the form "TR." followed by the page number in the transcript itself.

Respondent opposes the Petition and contends that it should be denied.  Dkt. No. 19-1, Resp.'s Mem. of Law.  Petitioner has submitted a Traverse.  Dkt. No. 22.  For the reasons that follow, it is recommended that this action be dismissed in its entirety.

## I. BACKGROUND

Petitioner was indicted by a Rensselaer County Grand Jury on August 21, 2015. SR at pp. 9-14.  The charges arose out of the deaths of Maria Lockrow and Michael Allen ("Allen") Lockrow on August 20, 2014, in the City of Troy, County of Rensselaer New York.  *Id.*  The trial was held before Judge Andrew Ceresia in Rensselaer County Court, August 2016.  Ultimately, the Jury returned a verdict finding the Petitioner guilty of two counts of second-degree murder (killing during the course of a felony); first- and second-degree burglary; and fourth-degree grand larceny.  Tr. at pp. 2787-2790; SR at p. 481.  The Jury acquitted Petitioner on the first- and second-degree murder charges based on an intentional killing, and the Trial Court dismissed the second-degree burglary conviction.  SR. at p. 481.  Petitioner's Motion to set aside the verdict was denied on January 4, 2017, SR. at pp. 819-821, at which time the County Court imposed consecutive sentences of 25 years to life on the murder counts, to run concurrently with a sentence of 25 years to life with each of the burglary counts, followed by five years of post-release supervision.  Resp.'s Mem. of Law at p. 16.

Petitioner appealed his conviction to the Appellate Division, Third Judicial Department.  He was represented by counsel.  On appeal he made six separate arguments: (1) that Petitioner was denied a fair trial as a result of the trial court's decision to limit the read back testimony of witness Lori Rist; (2) that the prosecutor knowingly introduced perjured testimony of Lori Rist, and as a result the trial court should have set aside the verdict; (3) that the prosecutor withheld evidence that, at the time of Risk's testimony, her son was being prosecuted for unrelated offenses by the District Attorney's Office; (4) that the proof of his guilt on the charges was legally insufficient because co-conspirator Daniel Reuter's testimony was not corroborated as required by New York Criminal Procedure Law § 60.22(1); (5) that Petitioner was denied a fair trial by the admission of prejudicial photographs of the victims' injuries; and (6) the Petitioner was denied his right to a speedy trial.  SR. at pp. 506-508.

The Appellate Division denied Petitioner's claims and affirmed the conviction and sentence.  *People v. Heimroth*, 181 A.D.3d 967 (3d Dep't 2020).  Leave to appeal to the New York State Court of Appeals was requested by Petitioner's counsel and denied on June 23, 2020.  SR. at pp. 1239-1241; *People v. Heimroth*, 35 N.Y.3d 1027 (2020). Reconsideration of the Court of Appeals ruling was requested by Petitioner himself and was rejected on August 18, 2020.  SR. at pp. 1245-1246.

4

## II.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234697, at *3 (S.D.N.Y. Aug. 28, 2003).  A federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The Second Circuit has summarized the application of the standard of review under AEDPA as follows:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: (1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled?  (2) If so, was the state court's decision "contrary to" that established Supreme Court precedent?  (3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362 (2000) and *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).  The standard of review under section 2254(d) is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).  "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. at 412.  A state court decision is "contrary to" established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts."  *Id.* at 413.  A state court decision is an "unreasonable application" of established Supreme Court precedent "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the

burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(e)(1)).

## II. DISCUSSION

### A. Violation of the Right to a Speedy Trial

Petitioner maintains that his right to a speedy trial under the United States Constitution was violated by the approximate 23-month delay between his initial arrest and the commencement of the felony murder trial. The Sixth Amendment provides that: "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . .." U.S. Const. amend. VI. This right to a speedy trial, considered fundamental in the criminal context, applies to state prosecutions through the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 222-23 (1967). For constitutional speedy trial purposes, the length of the delay is generally measured from arrest or indictment, until conviction. *Betterman v. Montana,* 578 U.S. 437, 441 (2016). Determination of whether a particular criminal defendant has been denied a speedy trial is made on a case-by-case basis, utilizing the four factors identified by the Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 530 (1972): the length of the delay, the reasons for the delay, the timeliness and vigor of the assertion of the speedy trial right, and the degree of prejudice suffered by the defendant.

There does not appear to be any serious dispute in this case about the time periods in question, but a summary of the pretrial proceedings is critical. Petitioner was arrested for murder in the first degree on September 1, 2014. On September 8th of that year, he was arraigned on a multi-count Indictment (#14-1082) and entered a plea of not guilty. SR at pp. 159-60. Petitioner's counsel filed an Omnibus Motion with the Rensselaer County Court on November 5, 2014. SR. at p. 160. After release of the grand jury minutes, and further briefing, the Motion was fully submitted on March 18, 2015, and on July 9, 2015, the County Court dismissed the Indictment due to insufficiency of evidence. SR. at pp. 482, 731. At the request of the People, the County Court granted an additional 45 days to seek a new indictment[3], and at that point Daniel Reuter, who was also involved in this crime, had pled guilty, entered a cooperation agreement, and provided in person testimony, which resulted in the second Grand Jury charging Petitioner in a multi-count Indictment. SR. at pp. 9-14, 508, 658-663, 704-707.

Petitioner was then arraigned on the second Indictment (#15-1071) on August 27, 2015. SR. at p. 731. That Indictment charged the Petitioner with two counts of murder in the first degree, four counts of murder in the second degree, two counts of burglary in the first degree, one count of burglary in the second degree, and one count of grand

---

[3] New York State Law specifically allows the County Court to authorize resubmission of the charges to a grand jury as well as the detention of the defendant for a period of forty-five days to accomplish that task. N.Y. Crim. Proc. Law § 210.45 (McKinney).

larceny in the fourth degree.  SR. at pp. 09-14.  A Motion to dismiss Indictment #15-1071 was filed on August 27, 2015, upon the grounds that the Grand Jury failed to hear evidence that was specifically requested by Mr. Heimroth, in violation of N.Y. Crim. Proc. Law § 190.50(6).  SR. at pp. 21-27.  That Motion was denied on January 19, 2016, by Judge Ceresia, who noted that the Grand Jury was in fact presented with Petitioner's request to call certain witnesses, but the Grand Jury deliberated and decided not to call any of those witnesses, as was its right.  SR. at pp. 28-29.  An Omnibus Motion in connection with the second Indictment was filed on November 12, 2015, SR. at pp. 43-100, and the County Court issued a Decision and Order on the Motion dated April 7, 2016, and filed on April 11, 2016.  SR. at pp. 117-123.  *Huntley* hearings were conducted on May 2, 2016.  Further memoranda was submitted by Mr. Heimroth's counsel.  SR. at pp. 124-139; 144-150.  The Motion to suppress the statements of Petitioner was ultimately granted by Judge Ceresia on July 26, 2016.  SR. at pp. 155-157.

Finally, on July 27, 2016, Petitioner moved to dismiss Indictment #15-1071 based upon an alleged violation of speedy trial requirements under both state and federal law.  SR. at p. 158-170.   While the Petitioner, through his counsel, did consent to having the trial adjourned from July 18, 2016, to August 1, 2016, he did not consent to any further adjournments.  *Id*.  The criminal matter was tried in August of 2016, and a

verdict of guilty on several of the counts in the Indictment was rendered on August 16, 2016. Approximately 23 months, therefore, elapsed between Petitioner's arrest and conviction.

Petitioner raised the issue of the denial of a speedy trial in violation of both his federal and state constitutional rights. SR at p. 162. The arguments were denied both at the trial court level, SR at pp. 822-831, as well as in front of the Appellate Division. The Appellate Division noted that the 23-month delay was substantial, and therefore justification from the Government was required. *People v. Heimroth*, 181 A.D.3d at 969-70. The Appellate Division also noted, however, that the charges themselves were extremely serious, and "much of the delay was occasioned by various routine pretrial matters as opposed to prosecutorial inaction." *Id.* Weighing all the factors, the Appellate Division concluded that Petitioner was not deprived of his constitutional right to a speedy trial. *Id.* at 970.

For the reasons set forth below, the Court finds that the State Court's determination that Petitioner's constitutional right to a speedy trial was not violated, was neither contrary to, nor involved an unreasonable application of, clearly established federal law, nor did it entail an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1)-(2); *see also Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002).

Initially, the Court notes that in making its ruling, the Appellate Division relied upon a five-factor test, commonly referred to as the "*Taranovich* factors", which considers the *Barker* factors, but explicitly adds in the nature of the underlying charge. *See People v. Heimroth*, 181 A.D.3d at 969-970.  As has been noted by this Court, the two tests, though worded in a slightly different fashion, are in essence identical.  *Garcia v. Annetts,* 2011 WL 4810012, at *6 (N.D.N.Y. Sept. 1, 2011), *report and recommendation adopted*, 2011 WL 4814913 (N.D.N.Y. Oct. 11, 2011) ("As patently clear, *Taranovich's* factors essentially mirror the four-part inquiry outlined by the Supreme Court in *Barker v. Wingo* and, if anything, are more favorable to those who assert a violation.") (internal citations omitted).  Therefore, the Appellate Division's utilization of "the *Taranovich* factors ... [which] do not contradict the *Barker* factors ... was not 'contrary to' clearly established federal law as established by the Supreme Court." *Williams v. Mazzuca*, 2007 WL 541699, at *3 (S.D.N.Y. Feb. 20, 2007).

The Court then turns to the State Court's analysis of the relevant factors.

### 1. Length of the Delay

The *Barker* factors are considered as a whole, to be applied on an *ad hoc* basis, but the length of the delay is considered "to some extent a triggering mechanism; only if the delay is substantial are the other factors brought into play." *Rayborn v. Scully*, 858 F.2d 84, 89 (2d Cir. 1988).  In the present case, 715 days elapsed from the date of arrest

until the date of conviction.[4]  The State Appellate Court concluded that this approximate 23 months was a sufficient period of time to require the prosecution to explain the reason for the delays.  This conclusion is consistent with federal law as Federal courts have found that a delay approaching one year from the time of the accusation is considered "presumptively prejudicial."  *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992); *but see Allen v. Graham*, 2020 WL 4482674, at *9 (E.D.N.Y. Aug. 4, 2020) ("courts of the Second Circuit have repeatedly held, in murder and manslaughter cases, that lengthy delays do not violate a defendant's speedy trial rights where the prosecution has shown good cause for the delay and the defendant has not suffered prejudice.")

## 2.  Reasons for the Delay

The second factor requires the Court to consider the delay attributable to the Government, and whether that delay was deliberate, neutral, or valid.  *Barker,* 407 U.S. at 531.  "Although no single *Barker* factor is 'a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial,' the second factor - reason for delay - is often critical." *United States v. Moreno*, 789 F.3d 72, 79 (2d Cir. 2015) (quoting

---

[4] The fact that a second Indictment was filed in 2015 does not shorten the time period in question.  *See United States v. Black*, 918 F.3d 243, 259 (2d Cir 2019) (holding that speedy trial time under the Sixth Amendment runs "from the *first* indictment or arrest to trial.") (emphasis in original).

*Barker v. Wingo*, 407 U.S. at 533). "The Sixth Amendment is rarely violated by delay attributable entirely to the defendant." *Id.*

As correctly noted by the Appellate Division, a large part of the pretrial delay in Petitioner's case was a result of motions that were filed by his criminal defense counsel, several of which were ultimately successful. This time period included an eight month and five-day span marked from the first motion to dismiss filed on January 5, 2014, until the County Court's dismissal of the original Indictment on July 9, 2015. Also included would be the nearly 8-month period from the filing of the motion to dismiss the second Indictment on August 17, 2015, followed by an omnibus motion, which was resolved on April 7, 2016. Further, additional hearings were held regarding, amongst other things, the voluntariness of the Petitioner's statements to the police, which took several months to resolve, and which ultimately resulted in those statements being suppressed. Finally, Petitioner, through his counsel, stipulated to extend the time for trial to August 1, 2016. It was shortly after that time period that the trial actually commenced.

Petitioner points to various factors where the government was responsible for a delay, including sluggishness in providing certain discovery, responding to his motions, as well as taking the full 45 days authorized by statute to resubmit the matter to the

second grand jury. In addition, there was some further delay when a new prosecutor was assigned to handle the case and needed to bring himself up to speed.

What is evident upon review, however, is that a large part of the 23-month delay in bringing this matter to trial related to pretrial activities initiated by the Petitioner himself, rather than from a bad faith delay of the Government to garner some strategic advantage. The case itself, involving a claim of murder in the first degree, was an extremely serious one, and the Appellate Division did not misapply federal law in its analysis of the reason for the delay.

### 3. Timeliness and Vigor in Asserting the Right.

While the Petitioner's counsel vigorously represented him and made numerous motions in the underlying criminal prosecution, the only point at which an issue with regard to speedy trial was raised was on July 27, 2016, when the formal Motion to Dismiss on this ground was filed. SR at pp. 158-170. It appears that this Motion was spurred on as a result of a change of prosecutor. In particular, on May 9, 2016, there was a conference before the County Court Judge at which time the District Attorney indicated that he would personally try the case but was on vacation during the previously scheduled trial week of July 18, 2016. SR. at p. 161. Accordingly, and on consent of the Petitioner, the trial was adjourned to August 1, 2016. *Id.* Thereafter, however, Assistant District Attorney Andrew Botts was assigned to the matter, and in

response, defense counsel requested that the matter be rescheduled back to the original trial date of July 18, 2016. *Id.* It was at that time that the Petitioner's counsel first notified County Court of an alleged speedy trial violation. As noted for the record, the County Court kept the August 1, 2016, trial date, and the matter proceeded at that time through verdict.

In light of the foregoing, it would be reasonable for the Appellate Division to construe this third factor in favor of the Government. Petitioner's assertion of the right was only presented after the vast majority of the delay had already occurred, after Petitioner and his counsel had already consented to the August 1, 2016 trial date, and four days before that trial was set to commence. *United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) ("The third factor . . . weighs heavily against appellants [who] waited roughly 22 months before advancing their speedy trial claims"); *United States v. McGrath*, 622 F.2d 36, 41 (2d Cir. 1980) (weighing the third *Barker* factor against the defendants where they "waited until immediately before trial to file their motion to dismiss on speedy trial grounds"); *United States v. Lane,* 561 F.2d 1075, 1079 (2d Cir. 1977) (finding that petitioner's "eve of . . . trial" speedy trial motion was "indicative of an interest in having the indictment dismissed, rather than of an interest in expediting the proceedings"); *cf. United States v. Tigano*, 880 F.3d 602, 617 (2d Cir. 2018)

("Tigano adamantly, consistently, and explicitly raised his speedy trial rights at nearly every appearance he made before the court.").

### 4. Prejudice

The last factor to consider is the degree of prejudice sustained by Petitioner as a result of the delay.  Excessive pretrial delay can inflict three kinds of cognizable prejudice: (i) "oppressive pretrial incarceration," (ii) "anxiety and concern of the accused," and (iii) "the possibility that the defense will be impaired." *Barker v. Wingo*, 407 U.S. at 532.  Delay "does not per se prejudice the accused's ability to defend himself" because the government bears the burden of proof when the case comes at last to trial.  *Id.* at 521.  In the present matter, Petitioner has not identified any concrete way that the delay prejudiced him.  He generally asserts that the delay would cause memories to fade, but the Petitioner himself did not testify at trial, and any issue with a faulty memory was used against the Government's witnesses and in fact promoted Petitioner's defense.  Admittedly, Petitioner was incarcerated during the entire time from his arrest until conviction.  In reference to a longer period of pretrial incarceration of almost three years, however, the Second Circuit noted: "While lengthy, this period of incarceration is not in itself oppressive under our caselaw. Nor is this case one of those exceedingly rare instances in which the length of the delay alone supports a showing of

prejudice." *United States v. Jakes-Johnson*, 2021 WL 2944574, at *3 (2d Cir. July 14, 2021) (internal citations and quotations omitted).

In sum, the Appellate Division's holding in Petitioner's case is not inconsistent with the Federal Court's interpretation of the right to a speedy trial. The complex nature of this most serious criminal prosecution; that much of the delay was attributable to the trial court considering and resolving appropriate motions filed by defense counsel, or was consented to by the Petitioner, himself; the fact that the issue of a speedy trial was only raised at the last minute before the criminal trial; and the failure to identify any particular prejudice caused by the approximate 2 year pretrial detention, all lead to the conclusion that the lower court properly applied the constitutional law to this case. *See United States v. Zhukov*, 2023 WL 3083284, at *2 (2d Cir. Apr. 26, 2023) (holding that a 27-month delay between arrest and trial did not violate the dictates of the Sixth Amendment); *United States v. Reyes-Batista*, 844 F. App'x 404, 407-08 (2d Cir. 2021) (finding delay constitutional even though the defendant had 37 months of pretrial incarceration); *United States v. Swinton*, 797 F. App'x 589, 594-96 (2d Cir. 2019) (finding delay constitutional even though the defendant had 57 months of pretrial incarceration); *United States v. Howard*, 443 F. App'x 596, 599 (2d Cir. 2011) (finding delay constitutional even though the defendant had 43 months of incarceration between

arrest and guilty plea); *Rayborn v. Scully*, 858 F.2d at 89  (seven-year delay between arrest and trial was not a speedy trial violation).

## B.  Crime Scene Photos of Decedents

"Federal courts may issue a writ of habeas corpus based upon a state evidentiary error only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right, and that the error was so extremely unfair that its admission violates fundamental conceptions of justice." *Buchanan v. Chappius*, 2016 WL 1049006, at *4 (N.D.N.Y. Mar. 11, 2016) (citations and internal quotation marks omitted); *accord Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) ("The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice.") (internal quotation marks omitted). That is a "heavy burden, for generally, rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation." *Bonet v. McGinnis*, 2001 WL 849454, at *2 (S.D.N.Y. July 27, 2001) (internal quotation marks omitted).

In New York, a trial court judge has broad discretion in determining the admissibility of photographs. Demonstrative or physical evidence is generally admissible if, for instance, it "tend[s] to prove or disprove a disputed or material issue." *People v. Pobliner*, 32 N.Y.2d 356, 369 (1973), *cert. denied*, 416 U.S. 905 (1974)

(citations omitted). Accordingly, "photographs of a corpse are admissible even though they portray a gruesome spectacle and may tend to arouse passion and resentment against the defendant in the minds of the jury," *id.* at 369-370 (internal quotation omitted) and "should be excluded only if [their] sole purpose is to arouse the emotions of the jury and to prejudice the defendant." *Id.* at 370.

In the present case, four primary photos of the victims were introduced at trial, over the objection of defense counsel. Tr. at pp. 955-958. Defense counsel noted that the photographs were extremely graphic and argued that their prejudicial nature outweighed any potential probative value to the jury. Tr. at p. 951. After hearing argument, the County Court ruled in favor of admission of the photographs, with some being admitted only as black-and-white copies, and with an agreement to provide a specific cautionary instruction to the jury. Tr. at pp. 955-958, 1643-1645. In making that determination the County Court considered the nature of the crime, and the burden of proof that the People were required to satisfy. The Trial Court noted that intent was an element of the murder charges in question, and therefore the photographs were relevant to that issue, even though the defense was not arguing that the deaths of the Lockrows were caused accidentally.[5] Tr. at 955-957. The Court also noted, later on,

---

[5] If the evidence is relevant to show intent, "nothing in the Due Process Clause of the Fourteenth Amendment requires the State to refrain from introducing relevant evidence simply because the defense chooses not to contest the point." *Estelle v. McGuire*, 502 U.S. 62, 70 (1991).

that the County Medical Examiner, Dr. Michael Sikirica, had testified that his examination of the victims disclosed that they were struck repeatedly by objects that were of a different nature.  In particular, the injuries to Mr. Lockrow were consistent with being struck by a rounded object, whereas the injuries to Mrs. Lockrow showed evidence of being inflicted by an object that was rectangular in nature.  Tr. at p. 1626.  The photographs depicting the injuries and bruising pattern are said to be consistent with that testimony. Tr. at pp. 1643-1645.  This was an important element of the case because testimony from the accomplice, Daniel Reuter, was that he had struck and killed Mr. Lockrow with a bat, and it was Petitioner who had bludgeoned Mrs. Lockrow with a 2 x 4.  Tr. at pp. 1106-1108.  The wounds depicted in the photos could therefore be considered as corroboration of the testimony of the other participant of the crime – a key requirement under New York law.

The Appellate Division carefully considered Petitioner's argument that admission of the photographs was reversible error and rejected it. It noted that the photos themselves were not admitted for the sole purpose of inflaming the jury, but rather were "relevant on the issue of intent and to show the locations of one of the victims' bodies, the severity of the inflicted injuries and the nature of the weapon used upon each victim." *People v. Heimroth*, 181 A.D.3d at 970.  The Second Circuit, in applying federal law, has affirmed the admission of such graphic photos, recognizing

the trial court discretion in weighing the probative and prejudicial effects of such evidence. *Upson v. Capra*, 2023 WL 5585986, at *9 (E.D.N.Y. Aug. 29, 2023) (finding no constitutional violation for the admission of 16 graphic photographs of decedent's body, where the state court found that the photos corroborated witness testimony, and were relevant to the matter of death and intent). Thus, the Appellate Division's decision regarding the graphic photographs was reasonable and the photographs' admission did not violate clearly established federal law.

### C.  Petitioner's Claims Regarding Corroboration

As noted above, a large portion of the evidence against Petitioner was supplied by his alleged accomplice, Daniel Reuter. According to Mr. Reuter, he and Petitioner were drinking and using drugs when they decided to travel to the Lockrow residence to assault and rob Allen Lockrow because he was dating Reuter's aunt, Lee Ann Spencer, despite being married. Tr. at pp. 1087-1100. They picked up weapons along the way, and when they arrived at the Lockrows' trailer and went inside, Reuter proceeded to kill Allen Lockrow with a bat, and Petitioner beat Maria Lockrow with a 2 x 4 until she was also deceased. Tr. at pp. 1095-1109. After the murders, Petitioner and Reuter ransacked the residence, took items, and then drove away in Mr. Lockrow's vehicle, a Ford Escape. Tr. at pp. 1109-1115.

In New York, an accomplice, whether a codefendant or simply a prosecution witness, may testify against the defendant at trial, but that testimony must be corroborated by independent evidence tending to connect the defendant with the crime charged. N.Y. Crim. Proc. Law § 60.22; *People v. Potter*, 262 A.D.2d 1074 (4th Dep't 1999). "The corroborative glue does not require independent proof of the elements of the crime to sustain a conviction; it just has to bind the accomplice evidence to the defendant." *People v. Breland*, 83 N.Y.2d 286, 293 (1994).

Petitioner's argument regarding lack of sufficient corroboration was rejected by the County Court in connection with the Motion to Dismiss the second Indictment, SR. at pp. 117-123, as well as in connection with the Motion to set aside the guilty verdicts of the Jury, SR. at pp. 819-821. Nor did this argument fare any better on appeal. The Appellate Division offered this comprehensive assessment on the issue:

> To corroborate the acquaintance's testimony, the People offered the testimony of defendant's friend, who stated that both defendant and the acquaintance came to his house late one night in August 2014. Another friend testified that on one morning in August 2014, defendant and the acquaintance appeared at her house in a Ford Escape. The victims' neighbor testified that she called 911 after having observed two people run around the victims' car before it was driven away. One of the acquaintance's relatives testified that she drove defendant and the acquaintance in her car and that, after doing so, she found a blue fleece sweatshirt in the back seat where defendant had been sitting. The acquaintance's aunt testified that victim 1 kept extra clothes in his car and, on one instance, he retrieved a blue fleece sweatshirt from the car for her to wear. The People also offered photographs of the victims' door

depicting two separate footprints and the testimony of a medical examiner attesting that victim 2's bruising and abrasions were caused by a rectangular object. In view of the foregoing, we conclude that the acquaintance's testimony was more than adequately corroborated.

*People v. Heimroth*, 181 A.D.3d at 969

The Appellate Court's analysis of the totality of the corroborative evidence in the matter is no doubt correct. However, on this Petition the Court need not reach this issue. Corroboration of accomplice witness testimony is not required under federal law. Rather, the "testimony of a single accomplice is sufficient to sustain a conviction so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *United States v. Hamilton*, 334 F.3d 170, 179 (2d Cir. 2003) (internal quotation marks and citation omitted). "[L]ack of corroboration goes only to the weight of the evidence, not to its sufficiency[ ]" and the "weight of the evidence is a matter for argument to the jury, not a ground for reversal[.]" *Id*. (internal quotation marks and citations omitted). While a lack of corroboration may have constituted a violation of state law, lack of corroboration does not constitute a "violation of federal law, let alone of any federal constitutional right." *Young v. McGinnis*, 319 F. App'x 12, 13 (2d Cir. 2009) (citations omitted). Petitioner's claim, therefore, raises an issue of state law only that is not cognizable on federal habeas review. *Blackshear v. Artus,* 2019 WL 7971870, at *3 (N.D.N.Y. Oct. 30, 2019), *report and recommendation*

*adopted*, 2019 WL 6837719 (N.D.N.Y. Dec. 16, 2019). Accordingly, it is recommended that the Petitioner's argument in favor of release based upon lack of corroboration of Daniel Reuter's testimony be summarily dismissed.

### D. Laurie Rist

The final three grounds for habeas corpus relief (prosecutorial misconduct, a *Brady* violation, and an improper and incomplete readback of trial testimony) revolve around the testimony of a single prosecution witness - Laurie Rist. Ms. Rist, a certified nursing assistant, was the next-door neighbor of Allen and Marie Lockrow. Tr. at pp. 774-776. At trial, she testified that in the early morning of August 20, 2014, when the Lockrow's were murdered, Ms. Rist was awakened at 2:30 a.m. by her dog barking. Tr. at pp. 776-784. When she went to investigate, she looked out her window to the Lockrow residence, where she saw someone inside the bedroom, bending over, and she simultaneously heard banging. *Id.* Shortly thereafter she saw a person get into the passenger side of Mr. Lockrow's car, carrying an object. Tr at p. 787. At trial, she also testified on direct examination that she saw a second, taller person, prior to the car backing out. Tr. at p. 787. She called 911 to report the incident and what she observed. Tr. at p. 793.

Ms. Rist was subjected to rigorous cross-examination by Petitioner's counsel. It was noted that she never previously indicated seeing this second individual, she did not

24

include the claim in her statement to the police, did not testify to that fact in her appearances before the first or second grand jury, and did not tell the Assistant District Attorney prior to her trial testimony. Tr. at pp. 809-814. After some effort, Ms. Rist was recalled to the stand and her 911 call to emergency services was played at trial by the prosecution. Trial Exhibit 48. In the call to the authorities, Ms. Rist was heard using the word "they" when describing the intruders. Tr. at pp. 2216-2217; *see also* Dkt. No. 19-1 at p. 7. ("I think maybe somebody should check on his wife over there. There's been noises, banging and stuff going on and that's not normal over there… His wife is in the trailer next door, but there was two people just running around their car. He went down the street the wrong way and left. I don't know what's going on.").

Ms. Rist clarified at trial that the one individual that she saw outside went into the passenger side of the vehicle before it backed out, and therefore she assumed that there must have been another person (i.e. the driver) involved. Tr. at pp. 2216-2217. In fact, she saw only one individual that evening, and therefore her previous testimony regarding seeing a second "taller" person was, admittedly, untrue. Tr. at p. 2220. As a result, and because the prosecutor mentioned Ms. Rist in his opening as having seen two individuals getting into Allen Lockrow's car, Petitioner argues that the prosecution knowingly suborned perjury, and this supports his claim for release. Pet. at p. 2, 16; Dkt. No. 22.

25

In addition to the claimed prosecutorial misconduct outlined above, Petitioner maintains that there was also a *Brady* violation in connection with the testimony of Ms. Rist.  As summarized by the Appellate Division: "defendant argues that the People failed to disclose an individual, who defendant claims had a familial relationship with the neighbor, had been prosecuted for a crime and that had this been timely disclosed, he could have cross-examined the neighbor about any benefit this individual received in exchange for her testimony."  *People v. Heimroth*, 181 A.D.3d at 971-72.  However, as also noted by the Appellate Division the Petitioner "failed to submit any proof substantiating his claim that the neighbor and the individual were related. Furthermore, as Supreme Court noted, even if a familial relationship existed, there was no evidence indicating that the neighbor was even aware of the charges against the individual. Accordingly, we find that there was no *Brady* violation."  *Id.* at 972.

### 1. The Claims relating to a Brady Violation and Prosecutorial Misconduct are Procedurally Barred

A habeas petitioner must exhaust available state remedies or establish that there is either an absence of available state remedies or that such remedies cannot adequately protect his rights before proceeding in federal court.  *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (citing 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994).  Claims are exhausted when they have been "fairly presented" to the state

courts. *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir. 1982); *Morales v. Miller*, 41 F. Supp. 2d 364, 374 (E.D.N.Y. 1999).  To satisfy the exhaustion requirement a petitioner must present his claims to the New York Court of Appeals.  *Tyson v. Keane*, 159 F.3d 732, 735 (2d Cir. 1998) ("Exhaustion requires presenting a federal claim to the highest court of the state.").

In the present case, however, while Petitioner's counsel filed for permission to appeal to the New York State Court of Appeals, she limited that request to two issues: (1) the alleged speedy trial violation, and (2) a fair trial violation claim based on the denial of the trial court to provide the read back of witness Rist's testimony that was requested by defense counsel.  SR. at pp. 1239-1240.  The omission of the claims regarding an alleged *Brady* violation and the claim of prosecutorial misconduct by subordination of perjury, from the Leave Petition to the New York State Court of Appeals does, as a matter of law, render those claims unexhausted, and subject to dismissal.  *Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005).  While acknowledging this deficiency, Petitioner attempts to avoid dismissal by noting that these issues were raised by him and his *pro se* application for reconsideration.  SR. at p. 1245.  As

Respondent correctly points out, however, the discretionary nature of the reconsideration standard, coupled with the failure of Petitioner to identify any circumstances that would justify the prior omission, much less "extraordinary and compelling reasons," N.Y. Comp. Codes R. & Regs. tit. 22, § 500.20, renders this argument legally deficient. Resp. Mem. of Law at pp. 34-35; *Carrasco v. Miller*, 2020 WL 9256469, at *16 (S.D.N.Y. Nov. 13, 2020), *report and recommendation adopted*, 2021 WL 1040473 (S.D.N.Y. Mar. 18, 2021). Therefore, these two claims are procedurally barred.

### 2. Lack of Prejudice

Proceeding to the merits, a petitioner may be entitled to habeas relief if he shows that the government violated his right to due process by failing to turn over material exculpatory evidence before trial. *Strickler v. Greene*, 527 U.S. 263, 280–81 (1999); *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "The evidence whose disclosure is required under *Brady* may consist not only of exculpatory evidence but also of impeachment evidence, since the jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence." *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995) (internal quotations and citations omitted). In the present case, Petitioner points to the

issues of the witness's inconsistent testimony as well as a potential motivation to skew her testimony in favor of the prosecution to gain leniency for a family member.

To demonstrate a *Brady* violation, a petitioner must show that: "(1) the evidence was favorable to the accused; (2) the evidence was suppressed by the prosecutor; and (3) prejudice resulted." *Parker v. Smith*, 858 F. Supp. 2d 229, 237 (N.D.N.Y. 2012); Prejudice can be shown when "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. In other words, favorable evidence is subject to constitutionally mandated disclosure when it could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Cone v. Bell*, 556 U.S. 449, 470 (2009) (internal quotations omitted). What is more, evidence is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known, of the essential facts in dispute so as to permit him or her to take advantage of that evidence at trial. *United States v. Payne*, 63 F.3d at 1208.

In the present case, Petitioner cannot establish the necessary prejudice. As noted above, defense counsel, through skillful cross-examination, was able to have the witness admit that a portion of her direct testimony was factually incorrect. Thus, this is not a case where material issues were hidden by the prosecution from the jury, and the court is left to evaluate how the jury may have been affected by this omission. Here, defense

counsel had the witness admit to the Jury the disputed issue, had her agree with counsel that a recollection was incorrect.  The Jury was left, in its discretion, to believe some or all of the witness's testimony, and it is clear they did exactly that when the Jury still convicted Petitioner of a series of crimes.

Further, impeachment evidence has been found to be material where the witness at issue "supplied the only evidence linking the defendant(s) to the crime," *United States v. Petrillo*, 821 F.2d 85, 90 (2d Cir. 1987).  In the present case, however, Petitioner's accomplice testified explicitly and directly that Heimroth killed Mrs. Lockrow.

A similar analysis applies regarding Petitioner's speculation that a family member of Ms. Rist may have been prosecuted by the Rensselaer County District Attorney's Office.  Petitioner claims that this person was Ms. Rist's son, Pet. at p. 10, but the Trial Court found that the person allegedly prosecuted, Justin Rist, was not established to be the witness's son, or indeed, a relation of any sort.  SR. at p. 820.  Further, even if a relationship could be shown, there was no evidence that the witness knew of any charges, or that there was a quid pro quo arrangement with the District Attorney's Office.  SR. at p. 820-821.  Again, in light of the overwhelming evidence against Petitioner, as well as the effective cross examination of the witness, the necessary prejudice has not been established for this purported *Brady* violation.  *United*

*States v. Payne,* 63 F.3d at 1210 ("In contrast, a new trial is generally not required when the testimony of the witness is corroborated by other testimony, or when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable.") (internal citations omitted).

### 3. The Rist Readback

After the Jury had been given the case, they submitted a note asking for the Court to read back of that portion of the testimony of Laurie Rist that related to her hearing "knocking and banging at the same time she saw a shadow in the window over the dresser in the bedroom." Tr. at p. 2752; SR. at p. 1221. With the initial consent of defense counsel, that portion of the trial testimony was reread. Tr. at pp. 2753, 2769-2770. Thereafter, and after further consideration, Petitioner's counsel requested that a portion of his cross-examination of Ms. Rist be read to the Jury as well. That portion of the testimony was not for the same time period requested by the Jury, but rather related to the testimony concerning how many individuals Rist actually saw leaving the Lockrow residence and getting into Allen Lockrow's car. Tr. at pp. 2271-2272. The Prosecutor opposed Petitioner's request because the Court's read back provided the information that the Jury specifically asked for. Tr. at pp. 2273-2274. The Trial Couirt agreed. *Id.* Judge Ceresia noted that its duty was to provide a meaningful response to

31

the Jury's request, and that the read back he directed was just that as it was directed at the specific point in time asked for. *Id*. Petitioner's requested selection was for an entirely different time period. *Id.*

The readback issue was appropriately evaluated by the appellate court, and its ruling did not depart in any manner from the federal constitutional requirements of due process. In the criminal context, denial of due process focuses on the failure to guarantee the fundamental fairness essential to the very concept of justice. *Lisenba v. California*, 314 U.S. 219, 236 (1941). A trial court's response to a jury's request for readbacks of testimony during deliberations is within its broad discretion. *United States v. Salameh*, 152 F.3d 88, 133 (2d Cir. 1998). A similar situation to the case at bar was presented to the Second Circuit in a criminal case involving bribery. In that case the Jury requested the Court readback the co-defendant's testimony, and in particular, the cross-examination portion of the testimony. *United States v. McElroy*, 910 F.2d 1016, 1026 (2d Cir. 1990). The Trial Court read back the Government's cross examination of the defendant, and then asked the jury if that was what they wanted, to which the Jury Foreperson responded "correct." *Id.* Counsel for co-defendant Stedman objected, because he had cross examined McElroy as well, but his cross examination was not read back. *Id.* The Circuit rejected the codefendant's argument and upheld the decision of the trial court:

> The jury's written response to the court's query was ambiguous, and the trial judge gave it a reasonable interpretation in rereading the cross-examination by the government and asking if that was what the jury wished to hear. In light of the jury's affirmative answer, the court was well within the bounds of discretion in declining to have more reread.

*Id.*; *see also United States v. Salameh*, 152 F.3d 88, 133 (2d Cir. 1998) ("None of the requested testimony was responsive to the jury's note because none of this testimony involved the identification of Pamrapo tenants and visitors. Thus, Judge Duffy properly refused to read it.").

Petitioner's Jury requested a specific portion of the testimony of Mrs. Rist, and they were provided by the trial court with that precise testimony.  In doing so, the Trial Court Judge was responsive to the jury note, complied with state law, and did not violate any clearly established federal rights.  Petitioner's Counsel's request to have the trial court read back more than what was requested, while understandable, was not required.  If the jury had wished to hear Mrs. Rist's entire testimony regarding the number of individuals that she saw, it could have asked for that as well.  It did not.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED**, that no Certificate of Appealability ("COA") be issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2).  Any further request for a COA must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[6] within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <ins>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**</ins>  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: February 5, 2024
         Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[6] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).